FILED

2005 Aug-15  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **HARRIETT WELCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:02CV420-VEH** |
| | ) | |
| **BROWN & WILLIAMSON TOBACCO** | ) | |
| **CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF OPINION

This is an action arising out of the death, from cancer, of Plaintiff's husband, a longtime cigarette smoker. The Plaintiff is the personal representative of her deceased husband's estate. This case comes before the court on the Defendant[1] Brown & Williamson Tobacco Corporation's Rule 12(c) Motion for Partial Judgment on the Pleadings (doc. 32). The Plaintiff is *pro se* and has not filed any opposition. For the reasons hereinafter stated, the Defendant's Motion is due to be granted in part and denied in part.

---

[1] On March 3, 2005, this court dismissed with prejudice (doc. 27) Plaintiff's claims against defendants Piggly-Wiggly, Bruno's, Inc. and Winn Dixie. Brown & Williamson, Owl Drug Co., and John Casteneda remain defendants.

1

## Standard of Review

Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *See Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n,* 137 F.3d 1293, 1295 (11th Cir.1998) (citing *Hebert Abstract Co. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir.1990)); *see also* Rule 12(c), Fed.R.Civ.P. When we review a judgment on the pleadings, therefore, we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party. *See Ortega,* 85 F.3d at 1524 (citing *Swerdloff v. Miami Nat'l Bank,* 584 F.2d 54, 57 (5th Cir.1978)). The complaint may not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Slagle,* 102 F.3d at 497 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957) & citing *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 2916-17, 125 L.Ed.2d 612 (1993)).

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, *1370 (11th Cir. 1998).

## Background

The alleged facts, which the court takes, as it must, as true, are that the Plaintiff's husband, Larry James Welch, started smoking cigarettes when he was approximately eight years old. He became addicted to nicotine at an early age and was unaware at the time that he was becoming addicted. He smoked cigarettes manufactured by Defendant. He developed, and on September 30, 2001, died from, lung cancer. The lung cancer was caused by smoking.

This lawsuit was filed on January 8, 2002, in the Circuit Court for Talladega County, Alabama, and was removed to this court on February 19, 2002.  Alabama's Wrongful Death Act, Ala. Code § 6-5-410, authorizes lawful representatives of a decedent to bring claims on the decedent's behalf within two years of death, provided that the statute of limitations had not run on the claims before the date of death.  *See*, *Hall v. Chi*, 782 So.2d 218, 221 (Ala. 2000).

## **Defendant's Arguments**

Defendant raises four arguments:

(1) that Plaintiff's AEMLD[2] claim (Count One) is completely barred under the binding authority of *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183 (11th Cir. 2004);

(2) that preemption bars certain of Plaintiff's claims, specifically;

(A) that all Plaintiff's "failure to warn" claims are expressly preempted by the federal Labeling Act; and

(B) that Plaintiff's negligence (Count Two) and wantonness (Count Three) claims are barred by the doctrine of conflict preemption;

(3) that Plaintiff's conspiracy claim (Count Four) is limited to conspiracy to fraudulently misrepresent the dangers of Defendant's cigarettes and is further limited

---

[2]  Alabama Extended Manufacturer's Liability Doctrine

3

to allegations that the Defendant's allegedly fraudulent misrepresentations "involved the alleged addition of carcinogens and other harmful ingredients that would not have been well known to the ordinary cigarette consumer with access to knowledge common to the community"; and

(4) that Plaintiff's claims are subject to a two year statute of limitations.

## Analysis

I.   **Plaintiff's AEMLD claim (Count One) is completely barred under the binding authority of *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183 (11ᵗʰ Cir. 2004).**

In *Spain*, the Eleventh Circuit held that claims under the AEMLD of wrongful death due to cigarette smoking are, as a matter of Alabama law, barred.  *Spain*, 363 F.3d at 1194.  Thus, Defendant's Motion is due to be granted and Defendant is entitled to judgment as to Plaintiff's AEMLD claims (Count One).

II.  **Preemption under the Federal Cigarette Labeling and Advertising Act of 1965, § 5(b) (the "federal Labeling Act")[3].**

In *Spain*, the Eleventh Circuit stated the preemption test established by *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), and applied that test as follows:

"whether the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and

_____

[3]  15 U.S.C. § 1334(b).

4

> health ... imposed under State law with respect to ... advertising or
> promotion, giving that clause a fair but narrow reading," 505 U.S. at 524
> ....  It is this test that we will apply first to Spain's failure to warn claim
> and then to his negligent and wanton design and manufacture claims.

*Spain*, 363 F.3d 1183 at 1196.

It is important to note that the United States Supreme Court, in *Cipollone*,
observed that "there is no general, inherent conflict between federal pre-emption of
state warning requirements and the continued vitality of state common law damages
actions."  *Cipollone*, 505 U.S. at 518.  In order to prevail on its conflict pre-emption
claims, the Defendant must overcome the well-established "presumption against pre-
emption."  *See*, *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424
(2002).

**A.    Plaintiff's negligent "failure to warn" claims are preempted**.

As applied by the Eleventh Circuit in *Spain*, the federal Labeling Act expressly
preempts Plaintiff's negligent failure to warn claims[4].

> We are confident that the Alabama Supreme Court would hold that
> where a plaintiff asserts that cigarette manufacturer defendants have
> failed to warn consumers about the dangers of using their product, as
> Spain does, such a claim in essence alleges that the defendants breached
> their state duty to warn through advertising and promotion.
> Accordingly, we conclude that such claims allege a violation of a state
> law requirement based on smoking and health with respect to
> advertising and promotion, and therefore are preempted by the federal

---

[4]  Plaintiff's claims against Brown & Williamson are virtually identical to Spain's.

Labeling Act.  On that basis, we will affirm the district court's dismissal
of Spain's negligent failure to warn claim.

*Spain*, 363 F.3d 1183 at 1197.

Defendant's Motion is due to be granted and Defendant is entitled to judgment
as to such claims.

**B.     The doctrine of conflict preemption does not bar Plaintiff's
negligence (Count Two) and wantonness (Count Three) claims.**

The Defendant argues that the doctrine of conflict preemption bars Plaintiff's
negligence (Count Two) and wantonness (Count Three) claims and, because the
parties did not argue conflict preemption in *Spain*, the Spain court could not have
implicitly rejected this argument.  The court will deal with thesee arguments in
reverse order.

1.     The decision in *Spain* is fundamentally at odds with Defendant's
claim of conflict pre-emption.

The Eleventh Circuit has explained preemption, including conflict preemption,
as follows:

Congress's intent to preempt state law may be explicitly stated in
the language of a federal statute or implicitly contained in the structure
and purpose of the statute. *Jones v. Rath Packing Co.,* 430 U.S. 519,
525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Bearing in mind this
distinction between express and implied preemption, the Supreme Court
has identified three types of preemption:  (1) express preemption;  (2)
field preemption;   and (3) conflict preemption.  *Wisconsin Public
Intervenor v. Mortier,* 501 U.S. 597, 604-05, 111 S.Ct. 2476, 2481-82,

6

115 L.Ed.2d 532 (1991);  *This That & The Other Gift & Tobacco, Inc.
v. Cobb County, Ga.,* 285 F.3d 1319, 1322 (11th Cir.2002).  "Express
preemption" occurs when Congress has manifested its intent to preempt
state law explicitly in the language of the statute.  If Congress does not
explicitly preempt state law, however, preemption still occurs when
federal regulation in a legislative field is so pervasive that we can
reasonably infer that Congress left no room for the states to supplement
it--this is known as "field preemption" or "occupying the field."  *English
v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110
L.Ed.2d 65 (1990).   And even if Congress has neither expressly
preempted state law nor occupied the field, state law is preempted when
it actually conflicts with federal law.  "Conflict preemption," as it is
commonly known, arises in two circumstances:  when it is impossible
to comply with both federal and state law and when state law stands as
an obstacle to achieving the objectives of the federal law.  *Crosby v.
Nat'l Foreign Trade Council,* 530 U.S. 363, 372-73, 120 S.Ct. 2288,
2294, 147 L.Ed.2d 352 (2000)

*Cliff v. Payco,* 363 F.3d 1113, 1122 (11th Cir. 2004).

    "Conflict preemption" is one type of federal preemption.  The Eleventh Circuit,
in *Spain*, applying *Cipollone*, painstakingly applied "federal preemption" to each of
Spain's claims, including his negligent and wanton design and manufacture claims.
The Court held that "Spain's negligent and wanton design and manufacture claims
are not preempted by the federal Labeling Act."   *Spain*, 363 F/3d 1186 at 1197.
Plaintiff's claims in Count Two and Three are virtually identical to those in *Spain*.

    The *Spain* court's analysis as to such claims was based on the fact that the
*Spain* defendants had not provided, and the court on its own could not find, "any
authority indicating that Alabama law imposes a duty to warn in the context of

negligent and wanton design and manufacture claims." *Id*. Such authority remains conspicuously absent in this case. The Defendant cites *Gault v. Brown & Williamson*, No. 1:02-CV-1849, slip op. at 12-27 (N.D. Ga. March 31, 2005), as authority. First, the *Gault* opinion is based on an analysis of Georgia, rather than Alabama, law. Second, the *Gault* opinion does not address whether Georgia law imposes a duty to warn in the context of negligent and wanton design and manufacture claims. Thus, the *Gault* court did not, insofar as the court can determine, even consider the very analysis that was essential to the *Spain* court's determination that the federal Labeling Act did <u>not</u> preempt Spain's negligent and wanton design and manufacture claims. This court is not persuaded by *Gault*.

Additionally, because allowing a state to find tortious activities which Congress intended to remain legal is an obvious conflict, the court is confident that the *Spain* court was also well aware of such conflict. *Compare FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133-43 (2000), upon which the Defendant heavily relies, where the court ruled that Congress did not delegate to the FDA regulatory authority over cigarettes, based in part on the rationale that any such delegation would inevitably have resulted in the banning of that product. In spite of this presumed awareness, the Eleventh Circuit engaged in a rather painstaking analysis as to whether each of the individual tort claims was expressly preempted.

8

*See*, *e.g.*, *Spain*, 363 F.3d at 1197 (" . . . we are unable to say that Alabama law imposes on a manufacturer a duty to warn, the breach of which may result in liability for negligent and wanton design and manufacture.  And that means Spain's negligent and wanton design and manufacture claims are not preempted by the federal Labeling Act.").

In this court's view, the *Spain* court's analysis is consistent with the reasoning in *Conley v. R.J. Reynolds Tobacco Co.*, 286 F.Supp.2d 1097 (N.D. Cal. 2002), that [n]owhere does *FDA* suggest that Congress intended to displace the states' selective regulation of tobacco products that suffer from defective designs."  *Id.*, at 1106.  Thus, *Insolia v. Phillip Morris Incorporated*, 128 F.Supp.2d 1220 (W.D. Wis. 2000) does not reject or distinguish the analysis in *Spain*.

> In *Insolia,* the court, applying, *inter alia, FDA, supra,* held that state law was preempted insofar as it imposed a duty on the defendants not "to manufacture and sell cigarettes once they realized the danger that cigarettes posed." *See id.* at 1224. Imposing such a duty would result in a complete ban on tobacco products, which the *FDA* Court found impermissible based on Congressional policy.
>
> But it does not follow from the premise that a state may not completely ban the manufacture and sale of tobacco products that a state is powerless to regulate the sale of tobacco products within its borders where such products are designed in an unreasonably dangerous manner. It is such selective regulation that California has applied by recognizing a private right of action against manufacturers of products that suffer from defective designs.

*Conley v. R.J. Reynolds Tobacco Co*. 286 F.Supp.2d 1097, *1107.

In the court's view, *Spain*'s inquiry regarding the preemptive effect of section 5 implicitly assumes that all tort claims are *not* preempted by virtue of the fact that Congress regulates (rather than bans) the manufacture of cigarettes.  The court is not bound by that assumption.  *See*, *e.g.*, *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 (1952); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988).  But it will nevertheless defer to it.  *See United States v. Torniero*, 570 F.Supp. 721, 726 (D. Conn. 1983), aff'd, 735 F.2d 725 (2d Cir. 1984) (rejecting the prosecution's argument for abolition of the insanity defense because "superior federal courts" have "implicitly assumed" the availability of that defense, and a "district court should not  . . . effect the sort of profound alteration . . . the Government proposes");  *cf. United States v. Blue*, 384 U.S. 251, 255 (1966) (declining to take the "drastic step" of barring "altogether" a criminal prosecution because of "illegally obtained evidence," noting that the Court's "numerous precedents ordering the exclusion of such . . . evidence" implicitly assume that prosecution is not barred); *In re McDonald*, 205 F.3d 606, 612-13 (3d Cir. 2000) (Adherence by lower courts to *dicta* of the Supreme Court promotes the "evenhanded administration of justice," since this *dicta* indicate the likely "outcome" were the case decided by the Court. (citation omitted)).

10

Because the Defendant's conflict preemption argument is fundamentally at odds with the decision of the Eleventh Circuit in *Spain*, the court rejects it. Additionally, the court rejects this argument because the Defendant has failed to cite any persuasive authority that Alabama common law of negligent and wanton manufacture and design either: (1) stands as an obstacle to achieving the objectives of the federal Labeling Act; or (2) is such that it is impossible to comply with both the federal Labeling Act and such Alabama common law. To the contrary, *Spain* held that, under Alabama law, the obvious health risks of smoking meant that cigarettes are not "unreasonably dangerous." *Spain*, 363 F.3d at 1193-94. In response to one of several certified questions, the Alabama Supreme Court "instructed" the Eleventh Circuit "that Spain's negligence and wantonness claims are not subsumed by his AEMLD claims." *Id.* at 1196. The negligence and wantonness claims therefore could not be dismissed "purely on the basis that [Spain's] . . . AEMLD claims fail." *Id*. In essence, then, *Spain* held that negligence or wantonness claims against a tobacco company are not subject to dismissal solely because the toxicity of cigarettes is common knowledge. Yet that is exactly what a finding of conflict preemption would do. Defendant asks this court to take judicial notice that cigarettes are toxic, but then to state that because Congress did not want cigarettes banned, and chose instead to regulate the information that consumers would have, any potential state tort

11

liability for making and selling cigarettes, including tort liability for defective manufacture and design unrelated to the fact that cigarettes contain tobacco, is preempted.

This court is bound by *Spain*'s holding, regardless of the underlying reasoning. *See generally In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996) ("[T]he doctrine of *stare decisis* concerns the holdings of previous cases, not the rationales . . . ."). Because the Defendant's conflict preemption argument amounts to a direct challenge to a holding by the Eleventh Circuit, the court rejects it.

> 2.   The risk of an adverse jury verdict is not a state "regulation" or "prohibition."

The Defendant asks this court to follow *Gault* and *Insolia* in holding that: (1) the purpose of the federal Labeling Act was to allow the continued sale of tobacco products; and (2) the risk of adverse jury verdicts for defective design and manufacture claims necessarily conflicts with that purpose and therefore such claims are preempted. As stated previously, this court is not persuaded by *Gault*, and finds that the Defendant has misread *Insolia*.

The first source for a court to look to in statutory construction is the statute itself. *See*, *Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.*, 124 S.Ct. 1756 (2004) (Statutory construction must begin with language employed by

Congress and assumption that ordinary meaning of that language accurately expresses legislative purpose.)  Nothing in the federal Labeling Act states that the sale of tobacco products cannot be regulated by the states.  Further, the legislative history states that the states' traditional powers to regulate sales (as opposed to advertising) is preserved.  The Senate Report to the Act states that the Act "would in no way affect the power of any State ... with respect to the taxation or the sale of cigarettes to minors or the prohibition of smoking in public buildings, or similar police regulations."  S.Rep. No. 566 at 12.  Indeed, states routinely impose restrictions prohibiting the sale of tobacco products to minors.  See, CODE OF ALABAMA 1975, §§ 28-11-1; 13A-12-20.

Although the Supreme Court, in *Cipollone*, "held ... that the term 'requirement or prohibition' ... included common-law duties, and therefore pre-empted certain tort claims against cigarette companies,"[5] the Supreme Court has, since *Cipollone*, held that "[a]n occurrence [such as an adverse jury verdict for defective design or manufacture] that merely motivates an optional decision does not qualify as a requirement"[6] and therefore is not pre-empted.  This court relies on the analysis in *Bates* and finds that such an occurrence also does not qualify as a prohibition.

_____

[5] *Bates v. Dow Agrosciences LLC*, 125 S.Ct. 1788 at 1796-97 (2005).

[6] *Id*., at 1797.

13

As stated earlier, there is a presumption against pre-emption. The Supreme Court, in *Bates*, declined to reach the conflict preemption claim of the manufacturers.[7] That declination

> comports with [the Supreme Court's] increasing reluctance to expand federal statutes beyond their terms through doctrines of implied pre-emption [such as conflict pre-emption]. ... This reluctance reflects that pre-emption analysis is not "[a] freewheeling judicial inquiry into whether a state statute is in tension with federal objectives," ... but an inquiry into whether the ordinary meaning of state and federal law conflict.

*Bates*, at 1807 (THOMAS, J., concurring in judgment in part and dissenting in part) (internal citations omitted).

Defendant's Motion will be denied as to Counts Two and Three.

## III.   Plaintiff's conspiracy claims (Count Four).

As stated earlier, the complaint in this case is, in relevant part, virtually identical to that in *Spain*. Despite the fact that the *Spain* court did not so limit Spain's conspiracy claims, the Defendant asks this court to hold that Plaintiff's conspiracy claim (Count Four), is limited to allegations that the Defendant's allegedly fraudulent misrepresentations "involved the alleged addition of carcinogens and other harmful

---

[7] *Bates* involved the issue of pre-emption under the Federal Insecticide, Fungicide, and Rodenticide Act.

ingredients that would not have been well known to the ordinary cigarette consumer with access to knowledge common to the community."

In *Spain*, the court discerned "three separate conspiracy claims: (1) conspiracy to fail to warn consumers about the dangers of the defendants' cigarettes; (2) conspiracy to fraudulently suppress information about those dangers; and (3) conspiracy to fraudulently misrepresent those dangers to the public." *Spain*, at 1199. The court then analyzed each of those claims as to whether they were federally preempted.

As enunciated in *Spain*, this court holds that Plaintiff's conspiracy claims fail if the underlying cause of action is not viable. *Spain*, at 1199. Because Plaintiff's failure to warn claims are federally preempted, her claim of conspiracy to fail to warn consumers about the dangers of the Defendant's cigarettes also falls as preempted. *See Spain*, at 1200.

Similarly, Plaintiff's conspiracy to fraudulently suppress claim fails. "It is preempted because in Alabama a cigarette manufacturer can ordinarily meet its state law duty not to fraudulently suppress information about the dangers of smoking, which equates to a duty to warn about them, only through advertising or promotion." *Spain*, at 1200.

15

Finally, Plaintiff's conspiracy to fraudulently misrepresent claims fails in part. Because, "at least since the 1990s the dangers of cigarette smoking were well know to the community" ..., [Plaintiff's] conspiracy to fraudulently misrepresent claim – to the extent that it is based on the commonly know dangers of cigarettes – is foreclosed as a matter of Alabama law because [Plaintiff] cannot establish justifiable reliance." *Spain*, at 1201.

Thus, Plaintiff's conspiracy claims fail, and the Defendant is entitled to judgment as to such claims, except to the extent that such claims allege that the Defendant's fraudulent misrepresentations "involved the alleged addition of carcinogens and other harmful ingredients that would not have been well known to the ordinary cigarette consumer with access to knowledge common to the community." *See Spain*, at 1201.  Defendant's Motion is due to be granted in part and denied in part as to Count Four.

**IV.    Plaintiff's claims are subject to the following statutes of limitations: negligence and wantoness– 2 years; conspiracy – 2 years.**

As the Eleventh Circuit went through its preemption analysis of each of Spain's claims, it determined the applicable statute of limitations[8] for each claim.  Those are:

---

[8] Each running back from the date of death.

(1) as to negligent and wanton design and manufacture, two years (*Spain*, at 1198);

and (2) as to conspiracy, two years (*Spain*, at 1200).

A separate order will be entered.

**DONE**, this 15th day of August, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

17